IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Craig B. Shaffer

Civil Action No. 14-cv-01816-CBS

ENGELS ISAAC NUNEZ,

        Plaintiff,

v.

CAROLYN W. COLVIN,

        Defendant.

MEMORANDUM OPINION AND ORDER

Magistrate Judge Shaffer

    This action comes before the court pursuant to Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33, for review of the Commissioner of Social Security's final decision denying Engels Isaac Nunez's ("Plaintiff") application for Disability Insurance Benefits ("DIB"). Pursuant to the Order of Reference dated June 9, 2015, this civil action was referred to the Magistrate Judge "for all purposes" pursuant to the Pilot Program to Implement the Direct Assignment of Civil Cases to Full Time Magistrate Judges and Title 28 U.S.C. § 636(c). (*See* Doc. 26). The court has carefully considered the Complaint (filed July 1, 2014) (Doc. 1), Defendant's Answer (filed December 17, 2014) (Doc. 9), Plaintiff's Opening Brief (filed March 6, 2015) (Doc. 17), Defendant's Response Brief (filed April 3, 2015) (Doc. 18), the entire case file, the administrative record, and the applicable law. For the following reasons, the court affirms the Commissioner's decision.

## BACKGROUND

In September 2012, Plaintiff filed an application for disability benefits and alleged that he became disabled in November 2009. (*See* Social Security Administrative Record (hereinafter "AR") at 17, 36, 93-94, 231). Plaintiff alleged that his ability to work was limited by post-traumatic stress disorder ("PTSD"), traumatic brain injury, migraines with photophobia, osteoarthritis of the lumbar spine, knee problems, left ankle problems, temporomandibular joint pain, and hearing loss. *See Id*. at 235. Plaintiff later admitted that he began working as a bank teller in 2012 and, therefore, was applying for a "closed period" of disability for the period of November 2009 to December 2012. *See Id*. at 32. Plaintiff was born on September 7, 1983, and was 26 years old on the date of his alleged disability onset. *Id*. at 207, 231. He graduated from college in June 2012 and has previous work experience as a Staff Sergeant for the United States Army as well as experience in Student Services. *Id*. at 236-37. After his initial application was denied, Plaintiff requested a hearing, which was held on July 23, 2013, before an Administrative Law Judge ("ALJ"). *See Id*. at 1-5, 30-80[1].

Plaintiff was represented by counsel at the hearing and testified that he was diagnosed with PTSD in 2009. *Id*. at 39. He stated that at the time he was diagnosed he had suicidal ideations, homicidal ideations, and issues with domestic violence. *Id*. at 39-40. He stated that he also had frequent nightmares, avoidance reactions, irritability, anxiousness, and difficulty maintaining focus and concentration. *Id*. He testified, however, that he had been prescribed medications and that these medications helped with his symptoms. *Id*. at 41. Plaintiff also testified that he suffered from migraine headaches. *Id*. He stated that he had been prescribed

---

[1] The hearing was initially scheduled for April 23, 2013, but it was postponed to allow Plaintiff's counsel additional time to review the evidence. (AR at 81-90).

Topomax and Botox injections to help with his migraines. *Id*. at 42. Plaintiff also testified that he had ankle, back, and knee problems, and he stated that he had hearing loss.[2]

Plaintiff testified that he was enlisted in the Army until January 2012; however, during the period of alleged disability, he was in the Warrior Transition Unit and did little work as a soldier. *Id*. at 35-36. Due to his disability, the Army offered Plaintiff the option of doing CQ duty (monitoring the barracks) or attending school. *Id*. at 37. Plaintiff chose to enroll in college, and he received a bachelor's degree in business management on June 30, 2012. *Id*. at 37, 53. When asked whether a change in his condition had enabled him to return to work, Plaintiff testified that his motivation to work had nothing to do with his impairments. *Id*. at 51. Rather, Plaintiff said he was motivated by the need to pay child support and that he had simply learned ways to cope with his limitations. *Id*. at 51, 60. Plaintiff further admitted that, during his period of disability, he was receiving unemployment benefits, which requires a claimant to certify that he or she is ready and able to work and apply for work. *Id*. at 56.

A vocational expert ("VE") also testified at the hearing. *Id*. at 72-79. The ALJ asked the VE to assume hypothetically that an individual of Plaintiff's age — with the same education and past work experience as Plaintiff — had the following limitations: (1) perform work at a light exertional level; (2) standing, walking, and sitting no more than six hours in an eight hour day; and (3) no more than occasional use of ramps, stairs, ladders, ropes, scaffolds, kneeling, crouching, or crawling. *Id*. at 73.

Based on these limitations, the VE testified that Plaintiff's past relevant work in the Army would be eliminated. *Id*. However, the VE testified that the individual would still be able to work in a student services position. *Id*. The ALJ then posed a second hypothetical and asked

---

[2] Plaintiff's appeal does not contest any of the ALJ's findings with regard to his physical limitations.

the VE to assume that the individual could perform at a reasonable pace without an unreasonable number of rest periods, such that the worker would be off task for up to five percent of an eight-hour day. *Id*. at 74. The VE testified that the individual would be able to work in student services and as a bank teller. *Id*. at 75.

The ALJ then asked the VE to assume that the individual would be limited in his ability to understand, remember, and carry out complex or detailed instructions such that he would need to perform work at a Specific Vocational Preparation ("SVP")[3] less than or equal to 4. *Id*. at 75. The VE testified that the bank teller position had an SVP of 5 and, therefore, would be eliminated; however, the student services job would still be viable. *Id*. The ALJ then inquired whether the individual could still be employed in student services with two additional limitations: (1) standing and walking up to four hours in and eight hour day; and (2) the individual would miss work two or more times per month on an unscheduled basis. *Id*. The VE testified that the student services job would be eliminated under these circumstances. *Id*.

Plaintiff's counsel then asked the VE to assume an individual who would be limited to (1) a light range of work; (2) bending at the waist or stooping only occasionally; (3) standing or walking up to four hours in an eight hour day; (4) occasionally climbing ramps and stairs; (5) occasionally kneeling, crouching, and crawling; (5) fingering and handling frequently; (6) occasionally reaching in all directions with the dominant right upper extremity; and (7) no exposure to workplace hazards or pollutants. Counsel further specified that the individual would be limited to simple, routine, repetitive work with no quota demand; could have only occasional superficial interaction with coworkers; could have no interaction with the public by phone or in

---

[3] Specific Vocational Preparation is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.

person; and could have only occasional interaction with supervisors. *Id*. at 77. The VE testified that there would be no competitive employment for such an individual. *Id*.

Plaintiff's counsel then asked whether a person would be employable if they were distracted by psychological symptoms more than ten percent of the workday. *Id*. The VE testified that the cut off point for employability would be five percent. *Id*. at 78.

On July 31, 2013, the ALJ issued her decision denying benefits. *Id*. at 14-29. The ALJ's opinion followed the five-step process outlined in the Social Security regulations.[4] At step one, the ALJ found that Plaintiff was not engaged in substantial gainful employment from November 23, 2009 through December 19, 2012. *Id*. at 19. At step two, the ALJ found that Plaintiff had the following severe impairments: (1) myofascial pain syndrome; (2) status post left ankle arthroscopy; (3) status post left knee arthroscopy; (4) PTSD; and (5) alcohol abuse. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment that met or medically equaled a listed impairment. *Id*. at 20-21.

The ALJ then assessed the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant: can sit and stand/walk six hours in an eight-hour workday; can only occasionally climb ramps/stairs, climb ladders/ropes/scaffolds, kneel, crouch and crawl; and is limited in performing at a reasonable pace without an unreasonable number of rest periods, such that the claimant will be off task up to five percent of an eight-hour workday.

---

[4] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to past relevant work; and, if not (5) could perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. §§ 404.1520 and 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988). After step three, the ALJ is required to assess the claimant's functional residual capacity. 20 C.F.R. § 404.1520(e). The claimant has the burden of proof in steps one through four. The Social Security Administration bears the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

*Id*. at 21. In fashioning Plaintiff's RFC, the ALJ discussed much of the medical evidence in Plaintiff's records. The ALJ concluded that although Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. *Id*.

The ALJ specifically noted that Plaintiff's medical records were not consistent with his allegations of total disability. *Id*. Indeed, Plaintiff's traumatic brain injury was found to be mild, and the medical records indicated that Plaintiff's migraines were managed with medication. *Id*. at 22. An examination in 2009 found Plaintiff to have normal levels of consciousness, normal speech, euthymic mood and normal affect. In addition, Plaintiff's thought processes were not impaired, and his attitude was not abnormal. *Id*. at 23. And subsequent neurological and psychiatric examinations were generally consistent with this exam. Further, the ALJ noted that, consistent with the assessed RFC, Plaintiff had successfully attended college. In addition, Plaintiff's ability to return to work was not precipitated by any change in his condition or medications. *Id*.

At step four, the ALJ concluded that Plaintiff was able to perform his past relevant work in student services.[5] *Id*. at 24. Consequently, the ALJ found that Plaintiff did not meet the definition of "disabled" for purposes of the Social Security Act. *Id*. Accordingly, Plaintiff's application for disability benefits was denied.

---

[5] The ALJ also concluded that Plaintiff could perform "past work" as a bank teller. (AR at 24). As the Defendant acknowledges, Plaintiff's work as a bank teller did not constitute past work; rather, he was *currently* employed as a bank teller. However, as discussed herein, because the court concludes that the ALJ's step four determination regarding Plaintiff's student services job is supported by the substantial evidence, the error is harmless. *See Fischer–Ross v. Barnhart,* 431 F.3d 729, 730, 733–34 (10th Cir. 2005) (holding that an ALJ's factually-substantiated findings at other steps of the sequential-evaluation process provide a proper basis for upholding a step-three the decision).

Following the ALJ's decision, Plaintiff requested review by the Appeals Council. *Id*. at 12-13. The Appeals Council denied his request on May 7, 2014. *Id*. at 1-4. The decision of the ALJ then became the final decision of the Commissioner. 20 C.F.R. § 404.981; *Nelson v. Sullivan*, 992 F.2d 1118, 1119 (10th Cir. 1993) (citation omitted). Plaintiff filed this action on July 1, 2014. (Doc. 1). The court has jurisdiction to review the final decision of the Commissioner. 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

In reviewing the Commissioner's final decision, the court is limited to determining whether the decision adheres to applicable legal standards and is supported by substantial evidence in the record as a whole. *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (citation omitted); *Angel v. Barnhart,* 329 F.3d 1208, 1209 (10th Cir. 2003). The court may not reverse an ALJ simply because it may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in his decision. *See Ellison v. Sullivan,* 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted). The court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty,* 515 F.3d at 1070 (internal citation omitted). Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial

evidence." *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993) (internal citation omitted).

## ANALYSIS

On appeal, Plaintiff argues that the ALJ (1) erred in failing to find that his migraine headaches were a severe impairment; (2) improperly accounted for Plaintiff's mental limitations in the RFC; (3) failed to properly develop the record; and (4) erroneously concluded that Plaintiff was capable of performing past work.

### A.      Migraines as a Severe Impairment

At step two of the analysis, the ALJ found that Plaintiff had a number of severe impairments; however, migraine headaches were not included among them. Nevertheless, even if this court presumes, *arguendo*, that this conclusion was erroneous, it would not warrant reversal. "Once the ALJ finds that the claimant has *any* severe impairment, [s]he has satisfied the analysis for purposes of step two. [Her] failure to find that additional alleged impairments are also severe is not in itself cause for reversal." *Hill v. Astrue*, 289 F. App'x 289, 292 (10th Cir. 2008) (citing *Oldham v. Astrue*, 509 F.3d 1254, 1256-57 (10th Cir. 2007); *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)).

On appeal, Plaintiff contends that the ALJ was still required to consider the effect of his migraines in determining an RFC. However, the ALJ clearly did so. Notwithstanding her earlier finding at step two, as part of the RFC assessment, the ALJ stated:

> As for the claimant's alleged . . . migraines . . . the longitudinal medical record does not reflect functional limitations inconsistent with the assessed residual functional capacity. . . . The claimant was assessed with post-concussive headaches, with migraine features. However, the medications were managed with medication. While the claimant did not take his Depakote consistently and did not feel that it worked, he reported the

> citalopram, ziprasidone and valium all worked fine. The claimant has also used Topamax, and, as an abortive medication, Maxalt.

(AR at 22). This conclusion, and corresponding RFC, is supported by the medical record. According to Plaintiff's treatment notes and testimony, he was prescribed Botox shots, Topamax, and Maxalt to address his migraine headaches. He reported to his providers that these medicines were useful in reducing the frequency and intensity of his headaches. *Id*. at 451 (Botox), 468 (Botox), 474 (Maxalt). Indeed, at a follow-up appointment regarding his headaches, Plaintiff reported that he had not had any migraines and, therefore, was advised to continue taking Topamax and Maxalt. *Id*. at 1337-38.

Plaintiff's citation to record evidence that would support a contrary conclusion is not persuasive. Even if "the evidence may have also supported contrary findings, '[the court] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a difference choice had the matter been before it de novo.'" *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). The court views Plaintiff's arguments in this regard as little more than a thinly veiled request for this court to reweigh the evidence, which it cannot do. *Oldham*, 509 F.3d at 1257. This court may review only the sufficiency of the evidence; and in this case, there was enough evidence to support the ALJ's findings. *Id*. Thus, the court concludes that the ALJ did not err in her evaluation of the medical evidence and reached a permissible conclusion with respect to Plaintiff's migraines.

**B.     Mental RFC**

Plaintiff also contends that the RFC fails to address all of the limitations resulting from his PTSD. This argument is not well developed, and aside from a recitation of general case law and a reference to the ALJ's decision, Plaintiff's entire argument is comprised of a single

sentence. (AR at 23-24). However, because "[e]vidence is not substantial if it is overwhelmed by other evidence in the record," *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005), the court construes Plaintiff's argument as a contention that overwhelming evidence demonstrated that the ALJ should have included limitations regarding Plaintiff's PTSD symptoms. The court disagrees.

Here, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely credible." (AR at 21). The ALJ normally determines the weight and credibility of testimony, and these determinations are generally considered binding on the reviewing court. *See White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001). The ALJ's credibility determination, however, must be supported by specific evidence. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (discussing *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)).

In this case, the ALJ considered the entire record and concluded that Plaintiff's complaints regarding the severity of his symptoms were not credible. (AR at 28). In reaching this conclusion, the ALJ noted a number of inconsistencies between Plaintiff's subjective complaints and his medical records. For example a December 2009 examination found Plaintiff to have normal levels of consciousness, normal speech, euthymic mood and normal affect. *Id.* at 881. In addition, these treatment notes state that Plaintiff did not have high irritability; did not have any violent ideations; and had no trouble with getting to sleep, staying asleep, or nightmares. *Id.* Indeed, similar findings are reflected throughout Plaintiff's longitudinal treatment notes. *See Id.* at 636-38 (April 2010), 558 (May 2010), 1395 (April 2011), 1645 (August 2011), 339 (January 2012).

In addition, the ALJ noted that during the alleged period of disability, Plaintiff successfully attending college and obtained his bachelor's degree. *Id*. at 23, 37-38. Further, Plaintiff admitted that his ability to return to the workforce was not precipitated by any change or improvement in his medical conditions. Rather, he stated that he was motivated by financial concerns. *Id*. at 60-61. This supports an inference that Plaintiff was capable of working during the alleged period of disability despite his limitations.

On appeal, Plaintiff cites to treatment notes that demonstrate that he experienced PTSD symptoms. (*See* Doc. 17 at 9-10, 24). None of these treatment notes, however, contain any medical opinions from a treating physician that Plaintiff's PTSD symptoms were disabling. Rather, they simply establish the existence of the symptoms. *Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995) (stating that the "mere presence" of a medical condition is not enough; rather, that condition, "alone or in combination with other impairments, must render [the] claimant unable to engage in any substantial employment" (brackets and internal quotations marks omitted)). However, the existence of these symptoms is not at issue. Indeed, the ALJ concluded that Plaintiff's PTSD constituted a severe impairment. Furthermore, the ALJ specifically addressed Plaintiff's mental conditions when he required employment with an SVP of 4 and included an RFC limitation that Plaintiff would be off task up to five percent of an eight hour day. (AR at 21). Again, Plaintiff's argument is essentially an impermissible request for this court to reweigh the evidence. *See Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). Therefore, the court concludes that the ALJ did not err in failing to include more restrictive limitations related to Plaintiff's PTSD symptoms. The court also concludes that the ALJ's determination is supported by the substantial evidence.

**B.     Duty to Develop the Record**

Plaintiff asserts that the ALJ erred in failing to further develop the record. (*See* Doc. 17 at 22-24). Specifically, he argues that despite the voluminous record, none of the treatment notes discuss how Plaintiff's impairments affect his functional capacity to work. He contends, therefore, that the ALJ was required to order a consultative examination. The argument is not well taken.

An ALJ has broad latitude in ordering consultative examinations. *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997) (citing *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 778 (10th Cir. 1990)). "[W]here there is a direct conflict in the medical evidence requiring resolution, or where the medical evidence in the record is inconclusive, a consultative examination is often required for the proper resolution of a disability claim." *Id.* (internal citations omitted).

Here, however, the record contains approximately 2,000 pages of treatment records and medical evidence relating to Plaintiff's health and various conditions. Plaintiff has not identified any objective evidence in the record suggesting that his impairments required further medical inquiry. *Hawkins*, 113 F.3d at 1167. These records sufficiently explore Plaintiff's conditions and support the ALJ's RFC assessment. Although the nonadversarial nature of social security proceedings "imposes a duty on the ALJ 'to ensure that an adequate record is developed . . . consistent with the issues raise,'" the ALJ met that duty here. *See Jimenez v. Astrue*, 385 F. App'x 785, 788 (10th Cir. 2010) (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007)). Moreover, in cases such as this one, where Plaintiff was represented by an attorney at the disability hearing, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately

explored," and the ALJ "may ordinarily require counsel to identify the issue or issues requiring further development." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997). At the hearing in this case, Plaintiff's counsel made no indication that further development of the record was necessary to decide the matter. (*See* AR at 32). Indeed, the original hearing was reset specifically to give Plaintiff's counsel additional time to review the records. Despite this, Counsel did not identify any need for additional development. Consequently, the court concludes that the ALJ did not err by failing to supplement the record with consultative examinations.

## C.     Ability to Perform Past Work

Plaintiff also contends that the ALJ erred in concluding that he was capable of performing past relevant work. Specifically, he contends that he did not work in his student services position long enough for it to constitute past relevant work. He also contends that the ALJ's determination — that he could perform this past work — is not supported by the record. The court perceives no error.

First, Plaintiff's argument that he did not work in student services long enough is plainly contradicted by the record.[6] Despite his contention on appeal that he only worked in student services for two months, Plaintiff specifically reported that he performed the job of student services for sixteen months, from January 2003 to May 2004. (AR at 237, 243). Thus, Plaintiff's arguments in this regard are rejected.

Second, the ALJ's conclusion that Plaintiff was capable of performing his past work in student services is supported by the substantial evidence. During the hearing the VE testified that Plaintiff's past work in student services had an SVP of 4 and was classified as sedentary work. (AR at 73). The ALJ then posed hypotheticals to the VE that incorporated all of the limitations

---

[6] The court also notes that this issue was not raised before the ALJ. Generally, appellate courts do not inquire into issues which are not raised before the lower court. *See, e.g., Crow v. Shalala*, 40 F.3d 323, 324 (10th Cir. 1994).

that were ultimately adopted in the RFC. *Id*. 73-74. The VE testified that these impairments would not prevent Plaintiff from performing his past work in student services. *Id*. at 74-75. The ALJ then relied on this testimony in make her findings at step four. *Id*. at 24. The VE's uncontested testimony constitutes sufficient evidence to sustain the finding that Plaintiff's impairment did not prevent him from performing his past relevant work. *See Doyal v. Barnhart*, 331 F.3d 758, 761 (10th Cir. 2003) (An "ALJ may rely on the information supplied by the VE at step four.").

## CONCLUSION

The court is satisfied that the ALJ considered all relevant facts and that the record contains substantial evidence from which the Commissioner could properly conclude under the law and regulations that Mr. Nunez was not disabled within the meaning of Title II and, therefore, not eligible to receive Disability Insurance Benefits. Accordingly, IT IS ORDERED that the Commissioner's final decision is AFFIRMED and this civil action is DISMISSED, with each party to bear his or her own fees and costs.

DATED at Denver, Colorado, this 30th day of March, 2016.

BY THE COURT:

s/Craig B. Shaffer
United States Magistrate Judge